IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MATTHEW DARDEN                    :
                                        :      CIVIL ACTION
     v.                               :
                                        :      NO. 22-4054
DR. LITTLE, MEDICAL DIRECTOR,      :
MR. NICHOLSON, PHYSICIANS ASSISTANT,   :
DR. ROBINSON, MEDICAL DIRECTOR, and      :
NURSE SKINNER                      :

## **MEMORANDUM**

**Chief Judge Juan R. Sánchez**                                            **July 12, 2023**

Defendants, Drs. Little and Robinson, Physician Assistant Mr. Nicholson and Nurse Skinner have all filed a Motion to Dismiss Plaintiff, Matthew Darden's pro se Amended Complaint for failure to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the Amended Complaint plausibly shows Defendants were deliberately indifferent to Darden's serious medical needs in violation of the Eighth Amendment, the Motion to Dismiss shall be denied.

**FACTUAL BACKGROUND**

Matthew Darden is an inmate in the Pennsylvania state prison system. In August of 2017 while incarcerated at the State Correctional Institution in Chester, Pennsylvania (SCI-Chester), Darden fell and went to sick call in the prison, where he saw Defendant Dr. Robinson. Am. Compl. ¶¶ 3, 4, ECF No. 17. Robinson ordered X-rays, from which he determined Darden had "bone on bone arthritis." *Id.* ¶ 4. Robinson thus ordered cortisone shots for Darden's knee and gave him a cane. *Id.* ¶ 5. Over the next year, Darden "went to sick call on several occasions . . . complaining about severe pain" and was seen either by Defendants Dr. Little or Physician Assistant (PA)

1

Nicholson. *Id.* ¶ 6. In 2018, Little "placed" Darden on "Oxycodin"[1] for severe pain from his knee

and hip, and he remained on this medication until November 2021. *Id.* ¶ 7.

Darden alleges both Robinson and Little told him he needed surgery on his right knee, but

"instead of sending [him] out for surgery, Dr. Little made [him] stay on Oxycodin [sic] for about

three (3) years . . ." *Id.* ¶ ¶ 8, 10. According to Darden, his knee "caused my right hip to go," and

favoring his right side caused his "left knee and spine to go bad." *Id.* ¶¶ 9,10. Darden also contends

Little denied his request for an MRI on his back and he "was given a wheelchair because he could

no longer walk due to the deterioration of his knee and hip." *Id.* ¶¶ 10, 11. Little did send Darden

to SCI-Laurel Highlands in May 2019 "for intense therapy to prepare [him] for surgery," but

Darden alleges he suffered an injury which disqualified him from therapy and he was sent back to

SCI-Chester. *Id.* ¶¶ 13.

To date Darden has never had surgery. Because "Defendants waited too long to send [him]

for surgery," this "caused his left knee and hip and lower back to go very bad." *Id.* ¶¶ 14, 16.

Darden's knees "swell up and are very painful" and he suffers "serious pain on a daily basis from

his knees and left hip," but he was "taken off of the pain meds on November 13, 2021." *Id.* ¶¶ 14,

17. Darden alleges he has fallen on several occasions due to weakness in his limbs, his spine is

"out of line and crooked," his quality of life is suffering, mentally and physically, and he fears that

he will never be able to walk again, all "because of the deliberate delay in treating his medical

injuries." *Id.* ¶ 19. Additionally, on the same day he was taken off the pain medication, Darden

alleges Skinner poked him in the eye ostensibly because he "told her that she switched my

---

[1] The Court presumes Darden is referring to oxycodone, which "belongs to the group of medicines called narcotic analgesics." www.mayoclinic.org/drugs-supplements/oxycodone. "Oxycodone works on the central nervous system (CNS) to relieve pain," which is "severe enough to require opioid treatment and when other pain medicines did not work well enough or could not be tolerated." *Id.*

medication and gave me something else." *Id*. ¶ 12.  Darden's eye "constantly waters and is in

pain," and despite Little and the Optometrist telling him he would be sent to Wills Eye Medical

Center, he was never sent.  *Id.* ¶ 18.

Darden claims the Defendants' actions and omissions in failing to provide him with

adequate medical care constitute deliberate indifference to his serious medical needs in violation

of the Eighth Amendment.  He alleges the same actions and omissions also constitute negligence

and medical malpractice on the part of the Defendants.  As noted, Little, Robinson, Skinner and

Nicholson move to dismiss Darden's claims pursuant to Rule 12(b)(6).

## LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a) articulates three simple requirements for pleading a

claim for relief in the federal courts:

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless
> the court already has jurisdiction and the claim needs no new jurisdictional
> support;

> (2) a short and plain statement of the claim showing that the pleader is entitled
> to relief; and

> (3) a demand for the relief sought, which may include relief in the alternative
> or different types of relief.

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.*  In reviewing the complaint,

the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in the

plaintiff's favor.  *Pearson v. Sec'y. Dep't. of Corr.*, 775 F.3d 598, 604 (3d Cir. 2015).  "A pleading

that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'"  *Iqbal,* 556 U.S. at 678.

**DISCUSSION**

Because Darden is a pro se litigant, his pleadings are held to less stringent standards than those prepared by counsel and should be liberally construed.  *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  This means courts are to apply the relevant legal principles even when a complaint fails to name them.  *Id.* It also means courts must remain flexible, especially when dealing with imprisoned litigants.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).  Notwithstanding this leniency and flexibility, pro se litigants "cannot flout procedural rules" and "still must allege sufficient facts in their complaints to support a claim."  *Id.* (internal citation omitted).

In application of these principles, the Court construes Darden's allegations as endeavoring to make out a cause of action under 42 U.S.C. § 1983 and under Pennsylvania state law for negligence/medical malpractice.  By its terms, § 1983[2] creates no substantive rights, but merely provides remedies for deprivation of rights established elsewhere.  *Oklahoma City v. Tuttle*, 471

---

[2]      §1983 provides in relevant part:

> Every person who, under color of any statute, statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable . . .

U.S. 808, 816 (1985). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). And a defendant in a civil rights action must have been personally involved in the wrongs alleged. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F. 3d 210, 222 (3d Cir. 2015). "The first step in evaluating a §1983 claim is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Id.* (quoting, inter alia, *Cnty. of Sacramento v Lewis*, 523 U.S. 833, 841 n.5 (1988).

The Eighth Amendment prohibits the imposition of "cruel and unusual punishment." U.S. CONST. amend. VIII. The Supreme Court has recognized the government has an obligation to provide medical care for those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Whether manifested by prison doctors in response to a prisoner's needs, or by prison guards intentionally denying or delaying access to medical care or intentionally interfering with prescribed medical treatment, it is only deliberate indifference to a prisoner's serious medical need which constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* at 104-105. "'Deliberate indifference entails something more than mere negligence' and is a subjective standard that requires the official to both 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and to 'also draw the inference.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835-37 (1994)). A medical need is "serious" if it is one that has been

diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily

recognize the need for a doctor's attention. *Monmouth Cnty. Corr. Inst'l Inmates v. Lanzaro*, 834

F.2d 326, 347 (3d Cir. 1987) (internal citation and quotations omitted).  Accidental or inadvertent

failure to provide adequate medical care to a prisoner does not violate the Eighth Amendment.

*Helling v. McKinney*, 509 U.S. 25, 32 (1993); *see also Estelle*, 429 U.S. at 106 ("A complaint that

a physician has been negligent in diagnosing or treating a medical condition does not state a valid

claim of medical mistreatment under the Eighth Amendment.").  Thus, to successfully plead an

Eighth Amendment violation, a plaintiff must allege: (1) that the defendants were deliberately

indifferent to his medical needs; and (2) those needs were serious. *Rouse v. Plantier*, 182 F.3d

192, 197 (3d Cir. 1999).

In this manner, the deliberate indifference standard affords considerable latitude to prison

medical authorities in the diagnosis and treatment of the medical problems of inmate patients, and

the Courts generally disavow any attempt to second-guess the propriety or adequacy of a particular

course of treatment. *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)

(internal quotations and citation omitted).  Inherent in this latitude, however, is the assumption that

such an informed medical judgment has in fact been made. *Id.*  But when prison authorities prevent

an inmate from receiving recommended treatment for serious medical needs, deny access to a

physician capable of evaluating the need for such treatment, or where denial or delay in treatment

causes an inmate to suffer a life-long handicap or permanent loss, the constitutional threshold

established by *Estelle* has been crossed.  *Helling*, 509 U.S. at 32; *Inmates of Allegheny*, 612 F.2d

at 762.

In giving Darden's Amended Complaint a liberal reading, the Court notes it does not allege

the absence of care, but rather challenges the sufficiency of the care which Darden received.

6

Indeed, Darden's pleading specifically outlines the treatment which he has received since his fall in August of 2017 when the X-rays ordered by Robinson revealed that he had "bone on bone arthritis" in his knee.  Am. Compl. ¶ 4. ECF No. 17.  Over the next several years, Darden's treatment included cortisone shots to the knee, a cane, oxycodone for pain relief, physical therapy, and a wheelchair.  *Id.*  ¶¶ 5, 7, 10, 13.  Darden also saw both Little and an optometrist for the injury to his eye.  *Id.* ¶ 18.  But Darden alleges that despite this treatment, his physical condition has continued to deteriorate such that he now "is unable to walk, is in constant pain, and he is wheelchair bound."  *Id.* ¶ 20.  The gist of his Amended Complaint is thus that Defendants' alleged delays in treating his knee, hip and back, not sending him to Wills Eye Hospital, and waiting too long and refusing to send him for surgery resulted in the deterioration of Darden's physical condition to the point that his eye burns constantly, he is in serious pain, can no longer walk normally, and now needs a wheelchair.  *Id.*  ¶¶  16, 18, 19, 21, 22.  Insofar as Darden thus alleges he is now effectively handicapped and has been permanently impaired, the Court finds he has stated a plausible cause of action under § 1983 for violation of his Eighth Amendment rights.

In Count II of his Amended Complaint, Darden endeavors to make a claim under Pennsylvania state law for negligence/medical malpractice.[3]  In the Court's previous Memorandum dated January 5, 2023 granting his Motion to Proceed In Forma Pauperis and dismissing his original complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), Darden was advised of the need to submit a "certificate of merit" with respect to any malpractice claims which he wished to pursue.  Although Darden has not done so, he has filed a motion to

---

[3]  In his response in opposition to the motion to dismiss, Darden also suggests that Nurse Skinner's actions in poking his eye constitute assault and battery under state law.  Pl's Ans. Opp. Mot. Dismiss 3, ECF No. 44.  If Darden wishes to raise this as a separate cause of action, he must first file a motion for leave to amend his complaint.

extend the time to do so.  In view of Darden's pro se status and his incarceration, the Court shall

grant him an additional sixty (60) days to file a certificate of merit in compliance with Rule 1042.3

of the Pennsylvania Rules of  Civil Procedure.[4]  The motion to dismiss is therefore denied.

 An appropriate Order follows.

         BY THE COURT:


         /s/  Juan R. Sánchez
         _____
         Juan R. Sánchez,      C.J.

---

[4]  Darden is cautioned that should he fail to file the necessary certificate within the time provided, no further extensions shall be granted and his medical malpractice claim shall be dismissed with prejudice.